**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0215n.06
Filed: March 29, 2006

**No. 04-3517**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| AMADOU AW, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW FROM THE |
| v. | ) | BOARD OF IMMIGRATION APPEALS |
| | ) | |
| ALBERTO GONZALES, United States | ) | |
| Attorney General, | ) | |
| | ) | |
| Respondent. | | |

Before: KENNEDY, MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Amadou Aw, an ethnic Fulani and a citizen of Mauritania, appeals the denial of his application for asylum and withholding of removal. The Immigration Judge (IJ) found his testimony incredible and denied his application. The Board of Immigration Appeals (BIA) affirmed the IJ's decision without opinion. Because substantial evidence supports the IJ's decision, we deny Aw's petition for review.

I.

Born in Mauritania in 1952, Aw grew up in a small village where he worked on his family's farm. As a young adult, Aw moved to Nouakchott, the capital of Mauritania, where he earned a living buying and selling clothing. In early 1986, Aw testified, he received a message from his

father instructing him to return to the family's village, and after traveling six hours by car to reach the village, he discovered "military soldiers" "confiscating" his family's land "by [ ] order of the government." JA 123–24. According to Aw's testimony, the soldiers claimed that the land did not belong to "black people" but instead belonged to "all of us." JA 124. Aw informed the soldiers that the land belonged to his father, who had lived there his entire life and who had inherited the land from Aw's grandfather. The soldiers, Aw's testimony continued, beat him in front of the other villagers, tied him up and transported him to a prison in another town. Aw testified that while in prison he was placed in a "tiny room" where he was beaten for most of the day and had cold water thrown on him every morning. JA 124. He was released after approximately one week of incarceration.

Aw further testified that when he returned to his village he found that his family had been forced across the border to Jung, Senegal. On May 2, 1986, he traveled to Jung, where he found his family staying "in somebody's house," JA 136, living in what he described as "not a pleasant situation," JA 126. His 80-year-old father, he learned, had died during the family's forced removal. While attempting to cross a river on the way to Jung, his father had fallen into the river and swallowed a great deal of river water, which caused him to become ill and eventually to die two days later. Aw testified that before the forced removal his sister had been raped and had become pregnant.

Aw testified that he stayed with his family for a little over two weeks before leaving for Dakar, Senegal, where he found work selling "little stuff." JA 127. After spending six to eight

months in Dakar, he paid 500,000 francs to travel on a ship bound for the United States. After a four-month journey, he arrived in Miami, Florida on August 6, 1988.

Aw submitted two applications for asylum and withholding of removal—one in 1991 and one in 1997. On September 30, 1991, he submitted a hand-written application that is at odds with his testimony before the IJ and the information contained in his 1997 application. On the 1991 application form, for example, Aw checked "no" in response to a question asking if he had ever been detained, interrogated, convicted and sentenced, or imprisoned in any country. JA 407. And he checked neither "yes" nor "no" in response to a question asking if he "or any member of [his] immediate family" had "ever been mistreated by the authorities," although he did check boxes marked "race" and "political opinion" as possible reasons for mistreatment. *Id.* The 1991 application contains no mention of any mistreatment that he or his family suffered at the hands of the government.

On August 13, 1997, Aw submitted another application. The second application was inconsistent with the 1991 application and contains some inconsistencies with his testimony before the IJ.

After hearing Aw's testimony on July 30, 1998, the IJ denied Aw's application without explicitly ruling on Aw's credibility. Aw appealed, and the BIA remanded, asking the IJ to make a finding about Aw's credibility.

On October 1, 2002, the same IJ reviewed the transcript from the earlier hearing and concluded that Aw's "testimony [was] not worthy of belief," IJ Op. at 11, and that the "inconsistencies" in the record "cast doubt upon [Aw's] entire testimony," making it "very difficult, if not impossible," to assess which aspects of the testimony were true and which were false, *id.* at 8. Noting that Aw had not produced any evidence corroborating his story, the IJ found Aw incredible and once again denied his application. *Id.* at 11. Invoking its streamlining procedures, the BIA affirmed without opinion.

II.

To establish eligibility for asylum, an applicant must show that he is a "refugee," *see* 8 U.S.C. § 1158(b), which means he is "unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of [his] race, religion, nationality, membership in a particular social group, or political opinion," *id.* § 1101(a)(42)(A). An applicant's testimony, "if credible, may be sufficient to sustain [his] burden of proof without corroboration." 8 C.F.R. § 1208.13(a).

Because the BIA affirmed the IJ's finding without issuing a separate opinion, we review the IJ's opinion, *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003), to determine whether it is supported by substantial evidence, *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). As a finding of fact, the IJ's credibility determination must be upheld unless any "reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Yu*, 364 F.3d at 703.

At the same time, an IJ's credibility finding "must be supported by specific reasons" relating to "issues that go to the heart of the applicant's claim." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004); *see also Daneshvar v. Ashcroft*, 355 F.3d 615, 623 n.7 (6th Cir. 2004). "[I]rrelevant inconsistencies" and discrepancies that "cannot be viewed as attempts . . . to enhance [the applicant's] claims of persecution [ ] have no bearing on [his] credibility." *Sylla*, 388 F.3d at 926 (internal quotation marks omitted). The "cumulative effect" of a series of minor inconsistencies may "give[] support to the other grounds" for an adverse credibility finding. *Yu*, 364 F.3d at 703–04; *see also Abbo v. Gonzales*, No. 04-3303, 2005 U.S. App. LEXIS 22805, at *12 (6th Cir. Oct. 19, 2005). "Like affirmative inconsistencies, omissions may [also] form the basis of an adverse credibility determination, provided that they are substantially related to the asylum claim." *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005).

Aw argues that the IJ committed "a harmful and material error" by discrediting his testimony on the basis of "minor and immaterial" inconsistencies and that the IJ's adverse credibility finding is not supported by substantial evidence in the record. Aw Br. at 8. Some of the inconsistencies and omissions identified by the IJ, it is true, do not involve "issues that go to the heart of [Aw's] claim," *Sylla*, 388 F.3d at 926, and thus do not support the adverse credibility finding. For example, Aw's initial application indicated that he left Mauritania in April 1986 yet he testified that he left the country in May 1986, IJ Op. at 8; his initial application indicated that he was a tailor yet he testified that he sold children's clothes and did not work on clothes, *id.* at 8–9; and he could not recall the

name of the ship on which he spent four months at sea and claimed he was given a uniform from the ship's captain yet could not recall the captain's name, *id.* at 10.

But other inconsistencies and omissions go to the heart of his claim and in the end support the IJ's adverse credibility determination. Perhaps the most glaring inconsistency stems from the gap between Aw's 1991 application (stating that he had never been detained, interrogated, convicted, sentenced or imprisoned) and his 1997 application and testimony before the IJ (stating that he had been imprisoned for a week). Because the events surrounding Aw's alleged incarceration lie at the heart of his claim for asylum, the IJ justifiedly viewed the difference between the 1991 application on the one hand and the 1997 application and testimony before the IJ on the other as an improper attempt by Aw to "enhance his claims of persecution." *Sylla*, 388 F.3d at 926 (internal quotation marks omitted). *Compare, e.g.*, *Koxha v. Gonzales*, No. 05-3178, 2006 WL 348129, at *2 (6th Cir. Feb. 14, 2006) (finding that inconsistencies between two applications and testimony before the IJ as well as omissions in application materials supported adverse credibility finding) *and Dosa v. Gonzales*, No. 03-4323, 2005 WL 2108537, at *2–3 (6th Cir. Sept. 1, 2005) (finding that inconsistencies between application and testimony as well as omission of important detail supported adverse credibility finding) *with Abbo*, 2005 U.S. App. LEXIS 22805, at *19–23 (finding that inconsistency in applicant's testimony and omissions in his application did not amount to substantial evidence in support of an adverse credibility finding where the omissions and inconsistency were "more apparent than real and [were] [ ] technical and minor in nature") *and Nwakanma v. Gonzales*, No. 03-4317, 2005 WL 697074, at *2–3 (6th Cir. Mar. 25, 2005) (finding

that inconsistencies and omissions in applicant's testimony were not substantial evidence in support of an adverse credibility finding because many of the labeled inconsistencies were not actually inconsistent and the omissions and remaining inconsistencies did not "go to the heart of the applicant's claim") (internal quotation marks omitted).

Also supporting the IJ's finding were inconsistencies between Aw's 1997 application and his testimony, as well as omissions in his 1991 application. Aw stated in his 1997 application, for instance, that when he traveled to Senegal to look for his family, he found them in a refugee camp in N'dioum and that he "stayed at N'dioum for a few months." JA 288. Aw contradicted this version of events in his testimony (and in an affidavit filed on March 3, 1998) when he stated that his family had not been held in a refugee camp and that the refugee camps in N'Dioum were not created until 1989. JA 276. Making matters worse, Aw's 1991 application omitted significant events featured in his 1997 application and testimony: his confrontation with the authorities at the family farm; his incarceration by the authorities; his family's forced exodus to Senegal; his father's death; and the rape of his sister.

Nor can Aw sidestep the consequences of these omissions and inconsistencies by blaming others who helped to prepare the documents. He blamed the inconsistencies between his 1997 application and his testimony on his lawyer, *see* JA 140 (explaining an inconsistency in his application by stating that "maybe the person who wrote the application put it" in), and asserts that he paid someone to fill out his initial 1991 "application for him, and [that he] did not know the contents of" it, Aw Br. at 13. Aw does not contest, however, that he freely signed both applications

and that his signature on each amounts to a declaration under penalty of perjury that the application is "true and correct to the best of [his] knowledge and belief." JA 408; *see also Ahmed v. Ashcroft*, No. 02-3757, 2004 U.S. App. LEXIS 397, at *3–6 (6th Cir. Jan. 7, 2004) (stating that where asylum applicant's friend filled out his application and applicant "did not ask . . . what was on the application" but "just signed it," the IJ's adverse credibility finding based on the inconsistent application was appropriate).

In the final analysis, substantial evidence supports the IJ's adverse credibility determination. And because Aw has "failed to establish eligibility for asylum, he [also] cannot satisfy the more stringent standards necessary" to qualify "for withholding of removal." *Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005). Aw's request for withholding of removal necessarily must be rejected as well.

Aw, lastly, argues that the BIA abused its discretion in invoking its streamlining procedures and affirming the IJ's decision without opinion. As he sees it, the BIA's "use of the affirmance without opinion procedure was not appropriate" because the IJ "harmfully and materially erred in determining that [ ] Aw was not credible." Aw Br. at 8. The government responds that the courts of appeals do not have jurisdiction to review the BIA's implementation of its own streamlining procedure. Resp. Br. at 22 n.3. We need not resolve the government's jurisdictional defense, however, because no abuse of discretion occurred here. As we have said (and done) on many occasions before, *see, e.g.*, *Hassan*, 403 F.3d at 438; *Denko*, 351 F.3d at 731–32; *Kacaj v. Gonzales*, No. 04-3054, 2005 WL 1285654, at *5 (6th Cir. May 17, 2005); *cf. Tapucu v. Gonzales*, 399 F.3d

736, 743 (6th Cir. 2005); *Zheng v. Ashcroft*, No. 03-3184, 2004 WL 2940883, at \*2 (6th Cir. Dec. 20, 2004), we need not address this defense where "'the facts and legal issues' of the case fit 'well within the boundaries' of the [BIA]'s summary-affirmance authority, and accordingly the [BIA] did not err in invoking the streamlining procedure," *Kacaj*, 2005 WL 1285654, at \*5 (quoting *Denko*, 351 F.3d at 732); *see also* 8 C.F.R. § 1003.1(e)(4)(i) (permitting affirmance without opinion when "the result reached in the decision under review was correct" and the "issues on appeal are squarely controlled" by settled precedent).

## III.

For these reasons, we deny the petition for review.