**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0338n.06
Filed: May 15, 2009
File Name: 09a0338n.06
Filed: May 15, 2009

No. 08-3559

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| ASHRAF ANWAR YOUSEF HADDAD, | ) |
| | ) |
| Petitioner, | ) ON APPEAL FROM THE |
| | ) BOARD OF IMMIGRATION |
| v. | ) APPEALS |
| | ) |
| ERIC H. HOLDER, Jr., | ) O P I N I O N |
| Attorney General of the United States, | ) |
| | ) |
| Respondent. | ) |

Before: KEITH, COLE and McKEAGUE, Circuit Judges.

**KEITH, Circuit Judge.** Petitioner Ashraf Anwar Yousef Haddad ("Haddad"), a native and citizen of Jordan, seeks review of an order from the Board of Immigration Appeals ("BIA"), affirming, without opinion, the immigration judge's ("IJ") denial of his application for asylum, withholding of removal, protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), and voluntary departure. For the reasons set forth below, we **DISMISS** Haddad's petition for review of the denial of his application for asylum and his request for voluntary departure. We **DENY** Haddad's petition for review and **AFFIRM** the BIA's decision in all other respects.

**I. BACKGROUND**

Ashraf Haddad, a 46-year-old male, is a native and citizen of Jordan. On October 23, 1987, Haddad married his wife, Mervet Haddad, also a native and citizen of Jordan, in his former hometown of Zargah, Jordan. The couple have five children: Rakan, Husam, Zaid, Tamara, and Nour (ages 20, 18, 17, 16, and 13, respectively), all of whom are natives and citizens of Jordan.

On April 5, 2001, Haddad, along with his family, was lawfully admitted to the United States on a non-immigrant B-2 Visitor's visa, authorizing him to remain until October 4, 2001. Prior to this visit, Haddad had also visited the United States on a B-2 visa in September of 2000, without his family, and stayed approximately five months before returning to Jordan. Following his lawful admittance in April of 2001, Haddad remained in the United States beyond October 4, 2001.

On March 18, 2003, the Immigration and Naturalization Service (now the Department of Homeland Security, hereinafter "the Government") issued a Notice to Appear ("NTA") alleging that Haddad was removable under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") because he remained in the United States longer than he was lawfully permitted. During his removal proceedings, held on November 14, 2003, Haddad admitted that the allegations contained in the NTA were true and conceded removability. As Haddad declined to designate a country of removal, the immigration court designated Jordan as the country to which removal would be directed. On September 24, 2004, Haddad filed his applications for asylum and withholding of removal, and the alternative relief of voluntary departure. The IJ concluded that Haddad's asylum claim was time-barred and therefore, accepted his application on the issue of withholding of removal only.

At his merits hearing, held on March 15, 2006, Haddad, his mother-in-law, Nour Haddad ("Nour"), and his sister-in-law, Nesrin Nshiwat ("Nshiwat"), testified about the persecution they

believe Haddad faced in Jordan because of his Christian faith. According to Haddad, he had "problems" in Jordan because he and his family are Christians – specifically, practicing Catholics – and he now fears returning to Jordan. The "problems" Haddad described included not being able to wear a cross because Muslim individuals would make hurtful and degrading comments, and witnessing rock-throwing and name calling such as "crusaders" or "atheists" by Muslim individuals. Haddad further testified that in Jordan, he and his wife would attend church without their children, due to the likelihood of harassment.

Because of the alleged harassment, Haddad testified that he eventually moved his family from Zargah, where his neighbors were trying to convert him to Islam, to Al Fahais, Jordan, because Al Fahais had more Christians and he could "go and live and be at peace." But, according to Haddad, due to the "many, many Muslims" living there, he and his family continued to have problems in Al Fahais because of their religion. The problems Haddad allegedly faced in Al Fahais included Muslims trying to convert him and his family, and being subjected to disparaging remarks by Muslims about his Christian religion.

Haddad acknowledged that he was never physically harmed in Jordan, and that, despite the problems he faced because of his religion, he had planned on returning to Jordan when his authorized stay in the United States expired in October 2001. However, he stated that after the terrorist attacks of September 11, 2001, he feared returning because the situation in Jordan worsened due to an increase in Islamic fundamentalism. Haddad claims he now fears that if he returns to Jordan, his life will be in danger, and his daughters will be forced to convert to Islam.

Both Nour and Nshiwat testified that, in Jordan, they experienced what they believed to be harassment as a result of their Christian faith. Specifically, Nour stated that when she last visited Jordan, in 2005, she was unable to wear her crucifix, and was subjected to rock-throwing because she was not dressed in Muslim attire. Nshiwat testified that when she lived in Jordan and attended public schools in Zargah, she was called names and forced to take classes in the Islamic faith and classes that taught the Quran. In further support of his application, Haddad also submitted several news articles from the *Jordan Times*, *New York Times*, and CNN.com regarding conditions in Jordan.

Following Haddad's merits hearing, the IJ issued an oral decision denying Haddad's applications for asylum, withholding of removal and relief under the CAT, and alternative request for voluntary departure, and ordered Haddad removed to Jordan. Specifically, the IJ found that Haddad's proffered excuse for failing to timely file his asylum application did not constitute either "changed circumstances" or "extraordinary circumstances." The IJ further determined that Haddad was not credible, and that even if he was, he would nonetheless fail to prevail on the merits, as the incidents he alleged happened to him in Jordan because of his religion did not rise to the level of persecution, and did not establish that it is more likely than not that he will suffer persecution or torture if he returned to Jordan.

On April 7, 2006, Haddad timely appealed the IJ's ruling to the BIA. On April 10, 2008, in a per curiam order, the BIA affirmed the IJ's decision, without opinion. Haddad timely filed a petition for review with this Court.

## II. ANALYSIS

A.      **Standard of Review**

Where, as here, the BIA affirms the IJ's decision without opinion, this Court reviews the IJ's decision as the final agency determination. 8 C.F.R. § 1003.1(e)(4)(ii); *Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003). We review the IJ's factual findings under the deferential substantial evidence standard. *Hassan v. Gonzales*, 403 F.3d 429, 434 (6th Cir. 2005). Accordingly, "findings of fact are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). In contrast, we examine questions of law concerning immigration proceedings *de novo*. *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 907 (6th Cir. 2008); *Dorosh v. Ashcroft*, 398 F.3d 379, 381 (6th Cir. 2004) (noting that "when this Court reviews the BIA's 'application of legal principles to undisputed facts, rather than its underlying determination of those facts or its interpretation of its governing statutes,'" the review is *de novo* (quoting *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir. 2000))).

B.      **Time-Barred Asylum Application**

Haddad first appeals the IJ's determination that he was statutorily barred from relief based on the untimely filing of his asylum application, and his failure to establish either changed or extraordinary circumstances to excuse his untimeliness. An alien must demonstrate by clear and convincing evidence that he filed his asylum application within one year of his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). The only exceptions to this filing deadline are "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within" the requisite one-year time period.

8 U.S.C. § 1158(a)(2)(D); *see also* 8 C.F.R. §§ 1208.4(a)(4) & (5) (defining "changed circumstances" and "extraordinary circumstances").

Haddad does not dispute that when he filed his application for asylum more than one year had passed since his lawful admission into the United States. He argues, however, that changed circumstances in Jordan after the September 11, 2001 terrorist attacks clearly excuse the late filing and give rise to his well-founded fear of future persecution.[1]

This Court's review of the IJ's determination that an asylum application is time-barred is statutorily limited. 8 U.S.C. § 1158(a)(3). Accordingly, we review the IJ's denial of an asylum application for untimeliness "when the appeal seeks review of constitutional claims or matters of statutory construction" but not "when the appeal seeks review of discretionary or factual questions." *Almuhtaseb v. Gonzalez*, 453 F.3d 743, 748 (6th Cir. 2006) (construing judicial-review limitation of 8 U.S.C. § 1158(a)(3) in light of the REAL ID Act of 2005).

In *Almuhtaseb*, petitioner – a Jordanian national born in Hebron, a city in the West Bank territory – sought review of the BIA's denial of her asylum application (contending fear of persecution by the Israelis) on the grounds that it was time-barred, and that petitioner failed to establish "changed circumstances" to justify the delay in filing. *Id.* at 745-46. We held that our Court lacked jurisdiction to consider petitioner's asylum application based on changed circumstances

---

[1]On appeal Haddad also argues, for the first time, that beginning in 2004 a rapid increase in Islamic fundamentalism occurred in Jordan as a result of the U.S. war in Iraq. Because Haddad failed to raise and administratively exhaust this claim below, we will not review this issue. 8 U.S.C. § 1252(d)(1); *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) (citing *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004)).

relating to violence in the West Bank because "the argument regarding changed circumstances [was]

predominantly factual." *Id.* at 749; *Fang Huang v. Mukasey*, 523 F.3d 640, 650-51 (6th Cir. 2008).

We emphasized, however, that the jurisdictional bar of our review of the denial of an asylum

application as time-barred was not absolute, but rather, called for "a particularized inquiry into the

nature of a petitioner's claim." *Almuhtaseb*, 453 F.3d at 749 n.3 (noting that where one petitioner's

"argument regarding changed circumstances is predominantly factual . . . another petitioner might

present legal or constitutional issues regarding a changed-circumstances claim that would be within

our jurisdiction to consider.").

Here, as in *Almuhtaseb*, Haddad's claim regarding changed circumstances in Jordan rests on

challenging the IJ's factual determinations regarding whether there has been a rapid increase in

Islamic fundamentalism post-September 2001, such that Haddad's alleged fear of persecution now

directed specifically toward Christians because of their religion excuses his untimely filing. Thus,

we dismiss Haddad's petition to review for lack of jurisdiction.[2]

## C. Credibility Determination

Haddad also appeals the IJ's denial of his request for withholding of removal and relief under

the CAT based on the IJ's determination that Haddad's testimony was not credible, and thus did not

establish that he suffered past persecution or that there was a clear probability that he would suffer

future persecution if removed to Jordan. Even though we lack jurisdiction to review Haddad's

---

[2]Even if we construe Haddad's assertion that the IJ "completely ignored" the evidence he presented in support of his changed circumstances as a constitutional due process claim, such claim is belied by the record, whereby the IJ addressed and decided each of Haddad's arguments. Thus, Haddad fails to present a colorable due process issue.

asylum claim, the Court does have jurisdiction over Haddad's appeal of the IJ's denial of his requests for withholding of removal and protection under the CAT. *Sall v. Gonzales*, 251 F. App'x 337, 339 (6th Cir. 2007) (citing *Castellano-Chacon v. INS*, 341 F.3d 533, 544-52 (6th Cir. 2003)).

To qualify for withholding of removal, Haddad must show that there is a "clear probability" that he will be subjected to persecution if forced to return to Jordan. *Ali v. Ashcroft*, 366 F.3d 407, 411 (6th Cir. 2004). To obtain relief under the CAT, Haddad must establish that it is "more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *Pilicia v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) (citing the same standard).

As noted above, this Court reviews credibility determinations under the substantial evidence standard. Accordingly, the IJ's decision must be upheld unless it is "manifestly contrary to law." *Almuhtaseb*, 453 F.3d at 749 (quoting 8 U.S.C. § 1252(b)(4)(c)). Although the Court's review of the IJ's credibility determinations is highly deferential, "the determination must be supported by specific reasons, must not be based on irrelevant inconsistencies, and must be based on issues that 'go to the heart of' the applicant's claim."[3] *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). An alien's testimony that is vague, ambiguous, or lacking specific details may support an agency's adverse credibility determination. *Sall*, 239 F. App'x at 978-79. Moreover, the "cumulative effect" of a series of inconsistencies may "give[] support to the other grounds" for an adverse credibility finding. *Yu*, 364 F.3d at 703-04. Finally, omissions, like affirmative inconsistencies, "may [also]

___

[3]We note that the REAL ID Act of 2005 modifies the standard governing credibility determinations, permitting the IJ to consider any inconsistencies, inaccuracies, or falsehoods in an asylum applicant's statements, regardless of whether they "go to the heart of" the applicant's claim. However, this modified provision is inapplicable to the instant matter, as the Act only governs cases filed after May 11, 2005, and Haddad filed his asylum application on September 24, 2004.

form the basis of an adverse credibility determination, provided that they are substantially related to the asylum claim." *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005).

Despite Haddad's assertion otherwise, substantial evidence supports the IJ's findings that Haddad was not credible about his past persecution or his fear of future persecution. For example, although Haddad testified about rock-throwing and "day in and day out attacks" on him and his family because of their Catholic religion, no such incidents are reflected in his written asylum application. And, despite the IJ's multiple inquiries to Haddad for specifics, his testimony regarding these alleged incidents – which undeniably go to the heart of his claim – was inconsistent, and lacked details such as dates, nature, location and frequency of the attacks Haddad personally experienced. Furthermore, Haddad's witnesses failed to corroborate the alleged rock-throwing and attacks, and his wife, who, according to Haddad, witnessed these incidents, offered no testimony or written statement to support Haddad's claimed attacks and harassment. *See Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (noting that "'where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided'" and that "'[t]he absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof'" (quoting *In re S-M-J*, 21 I. & N. Dec. 722, 724-26 (BIA 1997))).

Additionally, the testimony offered by Haddad's witnesses was conflicting and inconsistent with Haddad's own testimony. Haddad attempted to portray Al Fahais as a predominantly Muslim area, similar to his hometown of Zargah. He initially testified that although he moved from Zargah to Al Fahais to "be at peace," he faced the same problems in Al Fahais because of the "many, many

Muslims." Only after the IJ pressed Haddad as to why he would move to a place with "many, many Muslims" when he was trying to escape problems with Muslims, did Haddad concede there was a larger population of Christians in Al Fahais.

The testimony of Haddad's witnesses further undermined Haddad's credibility regarding his attempt to portray Al Fahais as a Muslim area similar to his former hometown of Zargah. For example, Nour, now a U.S. citizen, testified that Al Fahais is "known as [sic] Christians," and that she last visited Al Fahais in 2005 to attend the baptism of her grandchildren. Nshiwat testified that a "big part of [Al Fahais] . . . is for Christian[s]." Moreover, the testimony of both Nour and Nshiwat concerning alleged harassment they experienced because on their Christian religion occurred in Zargah, not Al Fahais.

In addition, although Haddad's contention that his children had been "ostracized" because of their Catholic religion appeared to be a significant allegation in his written application, he did not provide any detailed accounts or even mention this in his oral testimony.[4] Moreover, only after Haddad's direct and cross-examination testimony concluded and the IJ, apparently seeking more detailed testimony, told Haddad "this was his time to tell the court all the problems he had," did Haddad claim disparate treatment in his employment in Jordan because of his Catholic faith – a claim that was not mentioned in his written application.

---

[4]Haddad erroneously claims that the IJ improperly found that he omitted from his application the alleged fact that his children were being ostracized. This is a misreading of the IJ's decision, as the IJ found that Haddad omitted his assertion that his children were ostracized from his testimony, not his application.

Thus, because substantial evidence supports the IJ's finding that Haddad was not credible about his past persecution or his fear of future persecution, we find no basis to disturb the IJ's adverse credibility determination.

## D.     Voluntary Departure

Haddad next challenges the IJ's denial of his request for voluntary departure.  This Court lacks jurisdiction to review the IJ's denial of voluntary departure.  8 U.S.C. § 1252(a)(2)(B)(i) ("no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under . . . 1229c [voluntary departure]"); *see also Abu-Khaliel v. Gonzales*, 436 F.3d 627, 630-31 (6th Cir. 2006) (same).  Accordingly, we dismiss Haddad's petition to review the IJ's denial of his request for voluntary departure for lack of jurisdiction.

## E.     BIA's affirmance of IJ's determination, without opinion

The BIA affirmed the IJ's decision, without opinion, pursuant to 8 C.F.R. §1003.1(e)(4). Haddad asserts that because the IJ's opinion "conflict[s] with [BIA] and federal precedent addressing the timeliness of an asylum application, credibility determinations, and eligibility for voluntary departure," his appeal of the IJ's decision "raised significant factual and legal issues that demanded a written opinion."  Thus, Haddad contends the BIA erred in summarily affirming the IJ's decision.

The issue of whether this Court may review the BIA's use of its streamlining procedure remains an open question before this Court.  *Denko*, 351 F.3d at 732; *see also Aw v. Gonzales*, 174 F. App'x 873, 877 (6th Cir. 2006) (declining to resolve jurisdictional issue because no abuse of discretion occurred); *Hassan*, 403 F.3d at 437.  We have noted, however, that this Court "need not resolve" the jurisdictional issue where, as here, "the facts and legal issues of the case fit well within

the boundaries of the [BIA's] summary-affirmance authority." *Aw*, 174 F. App'x at 877 (quoting *Denko*, 351 F.3d at 732); *see also* 8 C.F.R. § 1003.1(e)(4)(i). Accordingly, because there is no evidence that the BIA abused its discretion in affirming the IJ's determination without opinion, pursuant to 8 C.F.R. § 1003.1(e)(4), we deny Haddad's petition for review and affirm the BIA's decision.

### III. CONCLUSION

For the reasons set forth above, we **DISMISS**, for lack of jurisdiction, Haddad's petition for review insofar as it seeks review of the denial of his application for asylum, and his request for voluntary departure, and **DENY** Haddad's petition for review in all other respects.