**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0554n.06

**No. 09-3938**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 26, 2010**

LEONARD GREEN, Clerk

ELIAS ALI ELIAS ABUDAYA,

     Petitioner,

v.

ERIC H. HOLDER JR., Attorney General,

     Respondent.

                                  /

ON PETITION FOR REVIEW OF AN
ORDER OF THE BOARD OF
IMMIGRATION APPEALS

OPINION

BEFORE:    BOGGS and CLAY, Circuit Judges; and WISEMAN, District Judge.[*]

    **CLAY, Circuit Judge.**  Petitioner, Elias Ali Elias Abudaya, asks this Court to review the July 14, 2009, decision of the Board of Immigration Appeals (BIA) affirming the decision by the immigration judge (IJ) to deny his asylum application as untimely and to deny him withholding of removal and relief under the Convention Against Torture. Petitioner argues that his untimely asylum application should have been considered on the merits because it was filed within a reasonable time following changed circumstances in the Palestinian Territories, specifically in the West Bank.[1]

---

    [*]The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

    [1]We adopt the terminology of the U.S. Department of State most commonly used regarding the West Bank and the Gaza Strip and refer to the area at issue as the Palestinian Territories. In its Country Reports on Human Rights Practices, the Department of State refers to the region including Israel, the West Bank, and the Gaza Strip using the phrase "Israel and the Occupied Territories," so in referencing those reports, we do likewise.

Petitioner also argues that the unfavorable credibility determination of the IJ was not supported by substantial evidence on the record and that he is entitled to asylum, withholding of removal, and protection under the Convention Against Torture. For the reasons set forth in this opinion, the petition for review of the decision of the BIA is **DISMISSED** in part and **DENIED** in part.

## BACKGROUND

Petitioner, a native of Israel and citizen of the West Bank in the Palestinian Territories, entered the United States on July 1, 1999, on a B-2 visitor's visa. He has been married four times to different United States citizens since that time. With his first wife, Petitioner filed an application for adjustment of status based on a purported I-130 filed by that wife. He withdrew that application when the marriage ended after two years. Petitioner was married twice more, each marriage lasting less than one year. In 2005, Petitioner married his current wife, who filed another I-130 and application for adjustment of status on his behalf, which were still pending as of the last filings with this Court.[2] He received a Notice to Appear dated August 28, 2003, alleging that he was subject to removal for overstaying his nonimmigrant visa. Petitioner admitted the allegations supporting his removability.

On October 26, 2006, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture alleging that his involvement in the Palestinian organization Fatah would subject him to persecution and torture from the organization Hamas. In a September

---

[2]Counsel for Petitioner notified the Court at oral argument that Petitioner's wife had passed away, and that the application for adjustment of status she filed on Petitioner's behalf was denied. Petitioner allegedly has filed an application for adjustment of status based on the fact that he is a widower of a United States citizen. The status of any application for adjustment of status is not before this Court in this appeal.

12, 2007, oral decision, the IJ denied Petitioner's requests for relief as well as his request for voluntary departure. He was ordered removed to Israel or the Palestinian Territories.

Petitioner was the only witness to testify at his removal hearing, and he submitted written documentation in support of his claims. That documentation included the 2005 Country Report on Israel and the Occupied Territories and several news articles regarding those same country conditions. Several other pieces of documentary evidence were submitted by the government including the 2006 Country Reports and Petitioner's first application for adjustment of status filed with his first wife. The application for adjustment of status included Petitioner's answer to a question about whether he had been a member of any political organizations since the age of sixteen, to which he had responded in the negative.

The initial reason Petitioner came to the United States in 1999 was to visit his two brothers, one of whom is a naturalized citizen and the other, a permanent legal resident. Petitioner's sister has legally immigrated to Canada with her spouse, who is a lawyer, after residing in the United States for some time. Petitioner's parents still live in the family home in the West Bank.

Petitioner testified that, prior to his entry into this country, he was involved in the Student Union at Bethlehem University. According to Petitioner, the Student Union is associated with the political organization Fatah and, among other aims, seeks to educate students about Fatah. He was involved with the Student Union for four to four and a half years, and at one time was the assistant to the head of the organization. Petitioner testified that most members of the Student Union were also members of Fatah, and that he supported Fatah. Most of his family members supported Fatah

as well, though Petitioner testified that some of his family members supported or were members of Hamas.

Petitioner testified to several incidents in which his family members were subjected to harm or mistreatment, allegedly because of their involvement with Fatah. His first cousin, Aida, was killed in May 1998. Petitioner testified that Aida was known to be involved with Fatah and was accused of having connections to people working with or for Israel. Allegedly she was shot by Abraham Abiat, who was a member of Hamas, because of her political involvement with Fatah. The Palestinian Authority police forces arrested the assailant, who spent ten years in jail for the crime. After the arrest, members of Abiat's family allegedly threatened Petitioner's family and physically attacked another cousin of Petitioner's named Maher Abudaya.

Petitioner testified that, after he came to the United States, his family members continued to have problems with Hamas because of their support for Fatah and the Palestinian Authority. During the Second Intifada in 2000, Petitioner's cousin Hussein Abudaya was killed. Another cousin was also shot during the Second Intifada. Allegedly three of Petitioner's neighbors who also belonged to Fatah, including a former teacher, were killed during the Intifada. On April 28, 2001, Petitioner's cousin, Nidal, was killed by a sniper, allegedly an Israeli sniper, when Nidal worked for the Palestinian Authority police department.

According to Petitioner, three of his cousins died when their car exploded on October 18, 2001. Another cousin was killed in that same month during clashes between Palestinians and Israelis in Bethlehem. Petitioner testified that less than a month before the removal hearing, his uncle Kamal fled the West Bank to Jordan because of threats from Hamas related to his involvement in Fatah.

4

Allegedly, a member of Islamic Jihad who was previously involved in Hamas came to Petitioner's father to threaten Petitioner's uncle Kamal.

While Petitioner's parents and a younger brother remain in the West Bank, Petitioner testified that his father told him not to return because "there was nothing for him" in the West Bank. Supposedly his family has plans to leave the West Bank, but his father does not want to leave his house and land. Petitioner testified that his father has not been targeted or harmed by Hamas, Islamic Jihad, or any other political party because his father is old. His brother attends Bethlehem University and has not been targeted or harmed, allegedly because he is not politically active.

According to Petitioner's testimony, he grew up with people who became members of Fatah, Islamic Jihad, and Hamas. He was not sure whether he had family members who were currently involved in Hamas, but he testified that a cousin, Tamer, was previously involved in Hamas and was jailed in Israel for that involvement.

Petitioner testified that it is not safe for him to return to the West Bank because of his fear of Hamas targeting him because of his prior involvement with Fatah. He alleged in his testimony that Hamas was de facto in control of the West Bank, despite the fact that he also admitted that the leadership of the Palestinian Authority was primarily associated with Fatah. He also alleged a fear of persecution by Israel, claiming that Israel would arrest anybody in the West Bank, whether involved with Fatah, Hamas, or Islamic Jihad.

In addressing Petitioner's asylum application, the IJ first detailed the variety of events and timelines that may have given rise to the alleged changed circumstances giving rise to Petitioner's fear of future persecution. Whether the events were the Second Intifada in 2000 or several alleged

5

incidents of harm to Petitioner's family members in 2001, Petitioner did not file for asylum until 2006. Petitioner alleged that his fear of persecution actually arose in 2003 but that he was unaware of the availability of asylum as a form of relief. The IJ found that explanation not credible, since Petitioner is an educated person, is fluent in English, and has family in the United States who allegedly legally immigrated. Finally, the IJ noted that even if Petitioner had established changed circumstances as late as 2003, the three-year delay in his application for asylum was not reasonable given the totality of the circumstances.

The IJ found Petitioner not credible for several reasons, which the BIA also discussed in its opinion. First, Petitioner had claimed in his initial application for adjustment of status that he was not involved in any political organization, association, or similar group at any point since the age of sixteen. However, his asylum application based his fear of persecution primarily on his involvement with the Student Union and its affiliation with Fatah. Since both applications were made under oath, the inconsistency weighed against Petitioner's credibility.

The IJ also noted several other problems with Petitioner's credibility. His testimony contradicted the evidence presented in the Country Reports, especially with regard to the extent to which Hamas, rather than Fatah, then controlled the West Bank region. Also, the IJ noted that, given the other problems with Petitioner's testimony, he would have greatly benefitted from corroboration, which he did not provide despite the fact that he has family in the United States and Canada, and he is in touch with his family in the West Bank. Petitioner allegedly asked his father for corroborating statements from family members, but Petitioner did not credibly explain to the IJ why his father was reluctant to provide such assistance. Finally, the IJ noted the lack of documentary evidence to

support the allegations of so many cousins who supposedly died at the hands of Hamas. In light of the problems with Petitioner's testimony, and the lack of corroboration, the IJ found Petitioner not credible.

The IJ then went on to opine that, even if Petitioner were credible, he would not be eligible for withholding of removal or protection under the Convention Against Torture. In making that determination, the IJ relied upon the combined evidence of the Country Reports from Israel and the Occupied Territories showing that Fatah controls most political offices in the West Bank along with the fact that Petitioner's father, mother, and younger brother still reside in the West Bank without any threats from Hamas. Finally, the IJ noted that most of Petitioner's claims related to fear of general civil strife in the West Bank, which does not constitute persecution.

Petitioner appealed to the BIA, which affirmed the IJ's decision on July 14, 2009. This timely petition for review followed. Petitioner sought, and was granted, a stay of removal pending the resolution of his petition.

## DISCUSSION

### A.    Standard of Review

Whether this Court has subject-matter jurisdiction to review the timeliness of Petitioner's asylum application is a legal question that is reviewed *de novo*. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 630 (6th Cir. 2006). Where the BIA adopts and affirms the IJ's decision while also issuing its own opinion with explanation, this Court reviews both decisions. *Abdulahad v. Holder*, 581 F.3d 290, 294 (6th Cir. 2009). The IJ's findings of fact are reviewed under the substantial-evidence-on-the-record standard and so are deemed "conclusive unless any reasonable adjudicator would be

compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). Adverse credibility determinations are considered factual findings for the purposes of this Court's standard of review. *See Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006). Questions of law are reviewed *de novo*, with deference to the agency's interpretation of its own regulations. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

**B.      Timeliness of Petitioner's Asylum Application**

Generally the determination of whether an asylum application was filed within the applicable one-year statute of limitations is not reviewable by this Court. *See* 8 U.S.C. § 1158(a)(3) (no judicial review available for applicability of exceptions to one-year time limit); *see also Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 544 (6th Cir. 2003). In some limited instances, judicial review is available to determine legal questions and to resolve constitutional challenges related to the timeliness of an application. *El-Moussa v. Holder*, 569 F.3d 250, 255 (6th Cir. 2009) ("Although this court has jurisdiction to review untimeliness decisions where the petitioner raises constitutional claims or matters of statutory construction, it does not have jurisdiction to review claims . . . that raise discretionary or factual questions."); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006).

Aliens are entitled to due process of law in removal proceedings. *See Gilaj v. Gonzales*, 408 F.3d 275, 290 (6th Cir. 2005) ("Due process requires that an alien be afforded a full and fair hearing."). In order to prevail, Petitioner would need to show that he was not given such a hearing and that this procedural error caused actual prejudice. *See Al-Ghorbani v. Holder*, 585 F.3d 980, 992 (6th Cir. 2009). It may be a procedural error for the IJ and BIA to fail to explain fully a finding that an alien had not proven changed circumstances or that an alien had not shown that her asylum

application was filed within a reasonable time period after the alleged change in circumstances. However, if the IJ's decision and the BIA's decision are sufficiently reasoned to allow for meaningful review, that would be sufficient to allay such concerns. *See id.* at 992-93.

Petitioner frames his challenge to the IJ and BIA's determinations that he had not filed his asylum petition within a reasonable period of time following changed circumstances as both an issue of interpreting the statutory and regulatory language and as a procedural-due-process challenge. Both issues are theoretically reviewable by this Court. However, his first claim is better understood as a challenge to how the IJ found and applied the factual circumstances to decide whether Petitioner had proven changed circumstances or that he filed within a reasonable time. Petitioner's brief points to facts not presented to the IJ or BIA to support his claim of changed circumstances including a report from Amnesty International published in 2008, months after the conclusion of the removal hearing, detailing events in 2006 and 2007 that Petitioner claims should satisfy the statutory definition of changed circumstances. Such a factual challenge fails not only because it is based on facts not presented to the IJ, but also because we do not have jurisdiction to review this issue for factual errors. Petitioner also does not make any cogent argument that the IJ or BIA incorrectly construed the statute or applicable regulations when evaluating whether he presented evidence that he filed his asylum application within a reasonable time period of alleged changed circumstances.

To the extent that Petitioner raises a constitutional challenge, his claim appears to be that the reasoning of both the IJ and BIA fails to provide a sufficient explanation for ruling that his asylum application was untimely and that he had not filed within a reasonable time period of changed circumstances. However, the IJ clearly addressed each event that might have supported Petitioner's

claim of changed circumstances. Further, the IJ then found that even if Petitioner had shown changed circumstances, the latest date at which he claimed his fears arose was 2003 and that three years was not a reasonable time period given the circumstances. The BIA explained the IJ's reasoning while affirming it.

This Circuit has repeatedly found that there is no procedural-due-process violation when the IJ and BIA both address Petitioner's arguments, even if the explanations are cursory, in cases dealing with claims of changed circumstances. *See, e.g., Al-Ghorbani*, 585 F.3d at 992-93 ("The explanations offered by the IJ and the BIA are thorough enough to allow us to meaningfully review their decisions."); *Vanderkley v. Holder*, 345 F. App'x 79, 85 (6th Cir 2009) ("Petitioners' contention that the BIA failed to consider all of their arguments is belied by the record, which reflects the IJ's and BIA's consideration of the issues raise by Petitioners. . . ."); *Haddad v. Holder*, 339 F. App'x 507, 511 n.2 (6th Cir. 2009) ("Even if we construe [Petitioner's] assertion that the IJ 'completely ignored' the evidence he presented in support of his changed circumstances as a constitutional due process claim, such claim is belied by the record, whereby the IJ addressed and decided each of [Petitioner's] argument."). Petitioner's invocation of a meritless due process challenge does not "overcome the limits on this court's jurisdiction" to review the IJ's timeliness decision. *El-Moussa*, 569 F.3d at 255.

Petitioner's challenge to the IJ's determination that his asylum application was untimely is primarily a factual challenge, and to the extent that it is such, this Court does not have jurisdiction to review his claim and it is **DISMISSED**. To the extent that Petitioner raises a procedural due

process claim, it is without merit and is **DENIED**. Petitioner's asylum application cannot be addressed on the merits in this petition.

**C.** **Petitioner's Application for Withholding of Removal and Relief Under the Convention Against Torture**

In order to qualify for withholding of removal, Petitioner must demonstrate that there is a clear probability, or that it is more likely than not, that he would face persecution in the country of removal on account of one of the five protected grounds enumerated in the definition of a refugee. *Mikhailevitch v. I.N.S.,* 146 F.3d 384, 391 (6th Cir. 1998) (citing *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987)). Meeting this higher burden of proof then entitles the applicant to mandatory withholding of removal rather than the triggering of the discretionary standard of a grant of asylum. *Cardoza-Fonseca*, 480 U.S. at 429. The burden of proof for a withholding of removal application is generally more stringent than that for asylum. *See Zhao v. Holder*, 569 F.3d 238, 246 n.10 (6th Cir. 2009).

In order to establish entitlement to relief under the Convention Against Torture ("CAT"), Petitioner must demonstrate that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *see Gonzales*, 466 F.3d at 532. Torture is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining . . . information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1).

11

An IJ considers all relevant evidence in determining whether an alien is eligible for protection under the CAT, such as evidence of past torture inflicted on the petitioner, evidence that the petitioner could relocate to a part of the country where he or she would be unlikely to be tortured, evidence of mass violations of human rights within the country at issue, and any other relevant information regarding conditions in the country of removal. 8 C.F.R. § 1208.16(c)(3). The burden for a CAT claim is in some respects greater and in some respects lesser than a claim for asylum or withholding of removal. *See Kamalthas v. INS*, 251 F.3d 1279, 1283 (9th Cir. 2001) ("Coverage is broader because a petitioner need not show that he or she would be tortured 'on account of' a protected ground; it is narrower, however, because the petitioner must show that it is 'more likely than not' that he or she will be *tortured*, and not simply persecuted . . . .") (emphasis added).

Petitioner first challenges the IJ's adverse credibility finding, which the BIA affirmed as a basis for denying relief. Credibility determinations are based on the totality of the circumstances, taking into account several statutory factors including:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1229a(c)(4)(C). For applications filed after May 2005, "[credibility] determinations may be made 'without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim.'" *Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006) (quoting 8 U.S.C.

12

§ 1158(b)(1)(B)(iii)). In reviewing a credibility determination, this Court looks to each ground upon which the IJ and BIA relied, and determines whether a reasonable adjudicator would be compelled to reach a contrary result. *See Koulibaly v. Mukasey*, 541 F.3d 613, 622 (6th Cir. 2008).

Petitioner alleges that the IJ improperly based her adverse credibility finding on the inconsistency between his application for adjustment of status, in which he stated that he had not been a member of any political organizations, and his testimony at the removal hearing regarding his involvement in the Student Union and Fatah. According to Petitioner, his counsel prepared the application for adjustment of status, which Petitioner signed without reading and which did not reflect his actual involvement in such organizations. However, the IJ was nonetheless entitled to weigh this inconsistency among the other factors in assessing Petitioner's credibility, especially when it goes to the heart of Petitioner's claim, and a contrary view is not compelled by Petitioner's explanation of the inconsistency.

He also challenges the finding that his testimony contradicted the Country Reports for the region without corroborating documentation, arguing that the news articles he submitted as documentary evidence supported Petitioner's view that Hamas was *de facto* in charge of the West Bank despite Fatah's official role in the government. Even if Petitioner's view of the documentary evidence were the better understanding of the real political conditions in the West Bank, the record certainly does not compel the conclusion that the IJ should have found Petitioner to be credible. Additionally, the IJ noted the lack of corroborating evidence from Petitioner's family, both those in the West Bank and those in the United States and Canada, as a factor in assessing Petitioner's credibility. Each of the grounds upon which the adverse credibility finding relies was supported by

substantial evidence on the record, and so the IJ's finding, which was affirmed by the BIA, is affirmed. *See Zhao v. Holder*, 569 F.3d 238, 249 (6th Cir. 2009) (upholding adverse credibility finding where IJ focused on inconsistencies in testimony and lack of corroborating evidence).

The IJ alternatively held that even if Petitioner were credible, he would not be entitled to withholding of removal or protection under the CAT. This ruling was also supported by substantial evidence on the record. First, the lack of corroborating evidence supporting Petitioner's claims that family members were targeted and harmed by Hamas because of their involvement with Fatah weighs heavily against Petitioner's ability to carry his burden of proof. *See Pablo-Sanchez v. Holder*, 600 F.3d 592, 595 (6th Cir. 2010) ("A petitioner must provide some evidence of his persecutor's motive, 'direct or circumstantial.'") (quoting *Elias-Zacarias*, 502 U.S. at 483); *see also* 8 U.S.C. §§ 1158(b)(1)(B)(ii) (applicant must provide corroboration where reasonably obtainable), 1251(b)(3)(C) (requirement for corroboration applies to withholding of removal). Also, the lack of corroborating evidence from Petitioner's family in the United States and in Canada supporting either his claims of harm to other family members or his involvement in the Student Union further undermines his ability to establish that he was more likely than not to be persecuted or tortured. Further, Petitioner did not submit any direct or circumstantial evidence that his involvement in the Student Union was or is known to Hamas beyond his testimony that people he knew from childhood were members of Hamas and knew of his activities with Fatah. He offered no evidence that he had ever been personally threatened by Hamas because of his involvement, which, when coupled with the fact that his father, mother, and brother live in the West Bank without fear of persecution or torture, supports the determination of the IJ and BIA that Petitioner was not eligible for either form

of relief. *See Zacarias v. Gonzales*, 232 F. App'x 458, 463 (6th Cir. 2007) (relief denied when the petitioner presented evidence that father was killed possibly for political involvement, but other family remained in native country without harm); *Akhtar v. Gonzales*, 406 F.3d 399, 403-06 (6th Cir. 2005) (petitioner cannot rely solely on evidence of persecution of family members to support his claim of fear of persecution).

The IJ's adverse credibility finding is supported by substantial evidence on the record. Even if Petitioner's testimony were credible, the record does not compel a conclusion contrary to the decisions of the BIA and IJ to deny relief. Therefore, the petition for review of these claims is **DENIED**.

## CONCLUSION

For the reasons set forth above, the petition for review is **DISMISSED** insofar as it challenges the timeliness ruling by the IJ as a factual matter and **DENIED** as to all other claims.