**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0242n.06
Filed: May 6, 2008

**No. 07-3583**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| GJIN STENAJ, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON PETITION FOR REVIEW |
| | ) | FROM DECISION OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| MICHAEL B. MUKASEY, United States Attorney | ) | |
| General, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

_____


BEFORE: NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Gjin Stenaj appeals from a decision of the Board of Immigration Appeals ("BIA")

affirming the Immigration Judge's ("IJ") opinion that Stenaj failed to testify credibly in support of

his applications for asylum, withholding of removal, and protection under the Convention Against

Torture ("CAT"). Because the IJ provided specific, cogent reasons for her adverse credibility

finding, and because the finding was supported by substantial evidence, we deny the petition for

review.

I.

Gjin Stenaj, a native and citizen of Albania, entered the United States without being admitted

and applied for asylum in May of 2003. After the Department of Homeland Security initiated

removal proceedings, Stenaj appeared before the IJ and testified in support of his application for asylum, withholding of removal, and protection under the CAT. Stenaj appeared alongside his mother, Marije Stenaj, and sister, Valentina Stenaj, who filed a separate application for asylum, withholding of removal, and CAT protection. Their petition is not presently before this panel.

Gjin Stenaj testified that he became involved with the Albanian Democratic Party in 1990, attending meetings and attempting to gather signatures in support of the party. He recounted his history of arrests that he claims were a result of his membership in the party. Stenaj stated that he was first arrested in 1992 for taking part in a peaceful demonstration in Skoder, Albania. He claims that after he was arrested, he was taken to jail and beaten by the police with plastic sticks approximately ten to twelve times.

Stenaj testified that he was next arrested in June of 1997. He claims that while he was verifying elections at polling stations in Skoder, he and three other members of the Democratic Party were arrested and taken to jail where they were kept for three days. He was then immediately taken into the custody of the Socialist Party, who held him for four days. When asked at the hearing why he did not list this arrest and detention in his asylum application, Stenaj did not provide an explanation.

Stenaj testified that he was arrested again in September of the same year.[1] He claimed that he was arrested while attending a funeral in Tirana and was detained overnight. He testified that he was hit and kicked while in detention, which left black marks on his body. Stenaj testified that he

---

[1]In his application for asylum, Stenaj identified this arrest as occurring in September 1998.

was also arrested in October of 2000 while counting votes in an election in Hot I Ri. He claimed that he was taken to the police station, detained overnight, and beaten with plastic sticks while detained. Stenaj's final arrest occurred in March 2002. While he was walking home from work, Stenaj was arrested by police, placed in a van with his hands tied behind his back, and driven eighteen kilometers from town before being left to walk home at two o'clock in the morning.

After receiving testimony from Gjin, Marije, and Valentina Stenaj, as well as documentary evidence from petitioner and brief testimony from his brother, Mirash, the IJ issued her oral decision addressing Stenaj's petition. The IJ found that Stenaj had failed to offer clear and convincing evidence that his application for asylum was filed within one year of his arrival in the United States. Addressing the merits of Stenaj's claim, the IJ found that petitioner had not been credible in his testimony. The IJ first noted that Stenaj had provided only "very general testimony concerning his participation in Democratic Party activities," observing that petitioner was "not able to articulate with any degree of specificity his activity as a member of the Democratic Party and, more importantly, h[is] actions as an apparently appointed election commissioner" during elections. Likewise, the IJ noted that with regard to Stenaj's claimed beatings, petitioner "was not particularly specific as to his treatment on any occasion, stating only generally that he was tortured, beaten and pressured in most instances."

The IJ was also troubled by Stenaj's failure to mention his arrest in June of 1997 on his application for asylum. When asked about the oversight, Stenaj explained that he did not think this

seven-day detention was as serious as his arrest in October 2000.  The IJ was unconvinced with this

response, noting that the October arrest involved a single-day detention:

> The Court finds that this [June 1997 arrest] is significantly more expansive than a
> single beating or a single detention.  This is clearly an issue which goes to the hear[t]
> of the respondent's claim, since it relates not only [to] his detention by the police but
> also a detention by the political party which ultimately won the elections in June of
> 1997.  The failure to mention this is a significant factor in the Court's finding of a
> lack of credibility.

The IJ also found Stenaj's testimony about the October 2000 arrest troublesome, pointing to

an attestation submitted by Stenaj concerning the arrest.  The IJ noted that the attestation did not

mention any arrest occurring during the election in Hot I Ri, only that Stenaj was "threatened and

pressured" by supporters of the Socialist Party.  The IJ was apparently unconvinced by Stenaj's

explanation that "threatening" was the same as arrest, observing that Stenaj had not supported that

assertion with any evidence.

In addition, the IJ had difficulty with Stenaj's testimony concerning his arrest in March of

2002, in which he was arrested and dropped off 18 kilometers from home.  As the IJ described the

inconsistencies between Gjin's and his mother's testimony concerning the arrest:

> What is interesting to note is that the respondent Marije Stenaj testified that her son
> arrived home at 3 a.m.  Gjin Stenaj testified that he was left 18 to 20 kilometers
> outside the city of Skoder at 2 a.m., which could mean that he would have had to
> walk, with his hands [t]ied behind his back, approximately nine miles per hour.
> There's no indication by Mrs. Stenaj that her son arrived at home with his hands tied
> behind his back.  Nor did Gjin Stenaj say that he was released from this position by
> the police prior to attempting the journey home.

The IJ concluded that these inconsistencies undercut Stenaj's testimony, and Stenaj's failure to provide credible evidence foreclosed his request for asylum, withholding of removal, and protection under the CAT:

> The respondent's testimony is not supported by objective materials which he himself has submitted. It is certainly not supported by the Country Reports and this certainly, again, casts doubt on credibility.
>
> Overall, the Court must fin[d] that the respondent has not submitted a credible claim for asylum, withholding of removal and under the Convention Against Torture. The Court will, therefore, deny these applications on the grounds stated.

Stenaj appealed the IJ's decision to the BIA. The BIA affirmed the IJ's decision. The BIA declined to hold that Stenaj had not submitted a timely application for asylum, withholding of removal, and CAT protection. However, the BIA upheld the IJ's credibility determination, specifically and explicitly agreeing with the IJ's concerns regarding Stenaj's 1997 arrest and detention, the Country Reports that contradicted Stenaj's claims, and the attestation supplied by Stenaj that concerned his arrest in October 2000. Accordingly, the BIA dismissed Stenaj's appeal.

This timely appeal followed.

## II.

Stenaj bases his asylum, withholding of removal, and CAT claims on his past participation with Albania's Democratic Party, arguing that he and his family have a history of being persecuted because of their political beliefs and activities.

Under the Immigration and Nationality Act ("INA"), asylum may be granted to an alien who qualifies as a "refugee," which is defined as one "who is unable or unwilling to return to . . . [his or

her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Stenaj bears the burden of demonstrating that "persecution is a reasonable possibility should he be returned to his country of origin." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (internal quotation marks and citation omitted). An applicant is not required to demonstrate that he will probably be persecuted if returned because "[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). Petitioner's testimony, if deemed credible, may be sufficient to sustain the burden of proof without corroboration. 8 C.F.R. § 1208.13(a).

Even if not entitled to asylum, Stenaj may secure withholding of removal if he can show that his "life or freedom would be threatened in that country [to which he would be sent] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b). Petitioner must establish a "clear probability of persecution." *INS v. Stevic*, 467 U.S. 407, 413 (1984). To establish a clear probability, Stenaj must demonstrate that "it is more likely than not" that he will be persecuted upon return to Albania. 8 C.F.R. § 1208.16(b)(2).

To be eligible for protection under the CAT, Stenaj must establish "that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. §

1208.16(c)(2); *see also Ali v. Reno*, 237 F.3d 591, 597 (6th Cir. 2001) (defining and discussing "torture").

III.

On appeal, Stenaj disputes the IJ's adverse credibility determination, arguing that he supported his application with substantial evidence and that the IJ's credibility finding was based on minor or irrelevant inconsistencies in Stenaj's testimony. We disagree.

Although we review the decision of the BIA, where the BIA adopts the reasoning of one IJ, we review the IJ's decision directly. *See, e.g., Gilaj v. Gonzales*, 408 F.3d 275 (6th Cir. 2005). We review de novo purely legal questions regarding the requirements of the INA and the CAT, *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004), while findings of fact – including the IJ's credibility determination – are subject to the substantial evidence standard. *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Under this deferential standard, we must uphold the IJ's findings as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)), and these "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Thus, we may reverse a decision only if the evidence "not only supports a contrary conclusion, but indeed compels it." *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). *See also* 8 U.S.C. § 1252(b)(4)(D) ("No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence, as described in section 1158(b)(1)(B), 1229a(c)(4)(B), or 1231(b)(3)(C) of this title, unless the court

- 7 -

finds, pursuant to section 1252(b)(4)(B) of this title, that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.").

We conclude that substantial evidence supports the IJ's adverse credibility determination. The IJ and BIA noted inconsistencies with regard to Stenaj's claimed arrests occurring in June of 1997, October of 2000, and March of 2002. Despite Stenaj's argument to the contrary, these inconsistencies are not irrelevant or inconsequential, but rather go to the heart of Stenaj's petition, as they provide the basis for his request for asylum. Marije Stenaj's testimony concerning the night in March 2002 when petitioner claims to have been arrested conflicts with petitioner's account, as Marije testified that petitioner arrived home at three o'clock, with no signs that he had been beaten or had his hands tied behind his back with rope. Likewise, the attestation supplied by Stenaj to corroborate his account of the October of 2000 arrest undercuts his credibility, as no mention of an arrest was made in the attestation. Perhaps most damaging, however, is Stenaj's failure to list his June arrest in his asylum application. Stenaj attempts to minimize the importance of his asylum application, but as respondent points out, Stenaj's omission of the June 1997 arrest was repeated. In his firsthand attachment to the application, Stenaj listed his history of arrests several times – including stating that between 1997-2001, "I was arrested on 1998; and detained at least once by police during October 2000" – without once mentioning the June 1997 arrest.

With regard to his omission concerning the June 1997 arrest, Stenaj points to our opinion in *Liti v. Gonzales*, 411 F.3d 631 (6th Cir. 2005), in which we quoted with approval the Second Circuit's observation that "the circumstances surrounding the application process do not often lend

themselves to a perfectly complete and comprehensive recitation of an applicant's claim to asylum or withholding, and . . . holding applicants to such a standard is not only unrealistic but also unfair." *Id.* at 638 (quoting *Secaida-Rosales v. INS*, 331 F.3d 297, 308 (2d Cir. 2003)). But the rationale in *Liti* and *Secaida* was based substantially on the fact that "the form utilized by the INS for applications for asylum and withholding provides half a page for the applicant to explain why he or she is seeking asylum, and no more than two inches to recount mistreatment or threats against the applicant or the applicant's family by the government or other groups." *Id.* at 638 (quoting *Secaida-Rosales*, 331 F.3d at 308). Here, Stenaj omitted any reference to the June arrest not only on the pre-printed form, but also on his attachment, where he had unlimited space to recount his arrests. And Stenaj took advantage of this option, listing and explaining the circumstances surrounding his 1992, 1997, and 2000 arrests. Thus, Stenaj had plenty of opportunity and space to list his June 1997 arrest, an arrest that the IJ accurately described as "go[ing] to the hear[t] of the respondent's claim, since it relates not only [to] his detention by the police but also a detention by the political party which ultimately won the elections in June of 1997." Stenaj cannot blame his failure to mention this arrest in his application on a lack of available space.

We conclude that the IJ properly took this omission into account when making its adverse credibility determination. Moreover, the IJ's adverse credibility determination was not based on this omission alone, but rather on several inconsistencies and Stenaj's inability to provide any specific testimony concerning his activities with the Democratic Party and the manner of torture that he allegedly received. We agree with the IJ that these inconsistencies undercut Stenaj's credibility. The

IJ's credibility determination was supported by specific reasons and concerned issues that go directly to the merits of Stenaj's application for asylum, withholding of removal, and protection under the CAT. *Cf. Sylla*, 388 F.3d at 926 (observing that an adverse credibility finding must be supported by specific reasons and based on issues "that go to the heart of the applicant's claim").

The IJ's determination that Stenaj lacked credibility is dispositive of his asylum claim because, without credible evidence, he cannot demonstrate either past persecution or a well-founded fear of future persecution. *Katabarwa v. Gonzales*, 193 F. App'x 519, 526 (6th Cir. 2006) (citing *Adhiyappa v. INS*, 58 F.3d 261, 267-68 (6th Cir. 1995)). Moreover, because Stenaj has failed to meet the standard for asylum, he necessarily has failed to satisfy the more stringent burdens required to establish a claim for withholding of removal and protection under the CAT. *Ceraj v. Mukasey*, 511 F.3d 583, 594 (6th Cir. 2007).

IV.

For these reasons, we deny the petition for review.