NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0623n.06

No. 08-3895

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Sep 01, 2009**
LEONARD GREEN, Clerk

| | |
|---|---|
| Pencentius Vanderkley, et al., | ) |
| | ) |
|     Petitioners, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) BOARD OF IMMIGRATION |
| Eric H. Holder, Jr., | ) APPEALS |
| | ) |
|     Respondent. | ) |

Before:    KEITH, GIBBONS and KETHLEDGE, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.**  Petitioners Pencentius Vanderkley ("Vanderkley") and Marie Neltje Roring ("Roring"), (hereinafter "Petitioners"), natives and citizens of Indonesia, seek review of an order of the Board of Immigration Appeals ("BIA") dismissing their appeal from an immigration judge's ("IJ") denial of Vanderkley's application for asylum, withholding of removal, protection under the United Nation's Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). For the reasons set forth below, we **DISMISS** the petition for review insofar as it seeks review of the denial of Petitioners' application for asylum and relief under the CAT, and **DENY** the petition for review and **AFFIRM** the decision of the BIA in all other respects.

**I. BACKGROUND**

Vanderkley, a 67-year old male, and Roring, a 65-year-old female, are husband and wife and natives and citizens of Indonesia. They have been married since 1962, and have four children – three

of whom are in Indonesia and one in the United States. The family lived in Jakarta, Indonesia.

On or about June 11, 2000, and May 11, 2001, respectively, Vanderkley and Roring were lawfully admitted to the United States on non-immigrant B-2 visitors' visas, authorizing them to remain in the United States until December 10, 2000, and November 10, 2001. According to Vanderkley, prior to his June 2000 entry, he had visited the United States on two other occasions – first, in January 1997 for two weeks, and again in July 1999 for six months. Vanderkley testified that during his July 1999 visit, he "was trying to find a way to apply on [sic] how to live in the United States," but he did not apply for asylum at that time. Following Petitioners' lawful admittance in June 2000 and May 2001, they remained in the United States longer than authorized by their visas and were therefore placed in removal proceedings.

On April 7, 2003, and June 5, 2006, the U.S. Department of Justice commenced removal proceedings against Vanderkley and Roring, respectively, with the issuance of Notices to Appear ("NTA") alleging that they were removable under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") because they remained in the United States longer than permitted. At a master calendar hearing held in Detroit, Michigan, on September 8, 2005, Vanderkley, through counsel, conceded to both the factual allegations in his NTA and to removability, and requested relief in the form of withholding of removal and protection under the CAT. Vanderkley declined to designate a country of removal; thus, the court designated Indonesia as the country to which removal would be directed. Through counsel, Vanderkley stated that he was not eligible for asylum because more than one year had elapsed since he came to the United States and "there [was] no good reason" to excuse the untimely filing. Thus, the IJ concluded that Vanderkley was statutorily barred

from asylum and noted that Vanderkley was requesting withholding of removal, protection under the CAT, and voluntary departure only.

On July 18, 2006, Vanderkley applied for asylum, withholding of removal, and CAT protection. Also on July 18, 2006, in the immigration court in Newark, New Jersey, Roring filed a Motion for Change of Venue and a Motion to Consolidate proceedings with Vanderkley. In her Motion for Change of Venue, Roring admitted the factual allegations in her NTA, and conceded removability. The court granted Roring's motions and ordered the venue changed to Detroit, Michigan, where Vanderkley's proceeding was pending. On October 17, 2006, the IJ issued an Order consolidating the two cases.[1]

At Petitioners' merits hearing, held on October 24, 2006, despite his previous contention that he was ineligible, Vanderkley sought asylum protection. He stated that he did not apply for asylum within a year of arriving in the United States because he "was still trying to find out [how] to do it." The IJ emphasized her previous ruling that Vanderkley was barred from asylum protection, but allowed him to present evidence on the issue. In support of his asylum application, Vanderkley submitted a letter dated May 16, 2003, purportedly from the pastor of the church Petitioners attended in Jakarta. According to the letter, both Vanderkley and Roring witnessed a riot and the burning and looting of a supermarket and store near their home on May 19, 1998, and members of the church were afraid to attend the church because they thought it would also be burned. Vanderkley noted,

---

[1]Only Vanderkley submitted an Application for Asylum and Withholding of Removal. Roring would be a derivative beneficiary with respect to asylum only. 8 U.S.C. § 1158(b)(3)(A); *see also Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003) (noting that unlike an application for asylum, family members are not granted derivative status in applications for withholding).

however, that he did not have any documentary evidence to show that there was any religious conflict in Jakarta, that he would be singled out by anyone in Indonesia for harm or mistreatment, or that he would be tortured by a government official in Indonesia.

At the merits hearing, only Vanderkley provided testimony on Petitioners' behalf. Vanderkley testified that he was born in Sulawesi, Indonesia; that he is part Dutch; that he and his family are Christians – specifically, Seventh-day Adventists; and that his mother and siblings (seven brothers and four sisters) are all Christians who currently reside in Indonesia. Vanderkley also testified about alleged past problems he and his family faced in Indonesia because of their religion, including an incident in 1998 whereby "militant Muslims" stopped Vanderkley and his family on their way to church.[2] In addition to this alleged incident, Vanderkley testified that he also "experienced problems" in Indonesia because he is part Dutch and worked for an American company. He acknowledged, however, that the 1998 incident was "the only bad thing that ever happened to [him] in Indonesia." Vanderkley further testified that he fears returning to Indonesia because he has heard news reports and read magazine articles about the burning of churches and the killing and shooting of priests, and he does not believe the government of Indonesia would be able to protect him from "the militant Muslims." In addition to being targeted because of his religious beliefs, Vanderkley also testified about the persecution he believes he will face if forced to return to Indonesia, because of his ethnicity and his employment with an American company.

---

[2]This alleged incident is not the same alleged incident referenced in the May 16, 2003 letter.

Following the hearing, the IJ issued an oral decision denying Vanderkley's application for withholding of removal, CAT protection, and request for voluntary departure. The IJ found that Vanderkley failed to file his application for asylum within one year of his arrival to the United States, and that his proffered excuse for the failure to timely file – i.e., "that he was trying to figure out how to 'do it'" – did not constitute extraordinary circumstances or changed circumstances to excuse his untimely filing. The IJ went on to state that, "more importantly . . . this record is devoid of any other evidence whatsoever to demonstrate either changed circumstances or extraordinary circumstances" to excuse the untimely filing.

The IJ further determined that Vanderkley was not credible, noting that Vanderkley's written application contained "key omissions and omits events and details of his alleged claims to persecution and torture that were set forth in his testimony," for which Vanderkley "failed to provide a convincing explanation." The IJ specifically relied upon the May 16, 2003 letter submitted by Vanderkley as a "key factor" upon which her adverse credibility determination was premised, deeming the incident alleged in the letter a "key omission" in Vanderkley's testimony and written application for relief and protection. In addition, the IJ stated that although Vanderkley testified about a single alleged incident in 1998 where he and his family were prevented from going to church, he failed to mention this, or any other incident where he and his family were prohibited from going to church, in his written application. The IJ also found significant Vanderkley's failure to check the appropriate boxes on his application indicating that he was seeking withholding of removal based on his race or nationality, and his failure to include in his application any information regarding his

fear of returning to Indonesia because he is part Dutch, he worked for an American company, or he would be perceived as an American citizen.

Moreover, the IJ determined that even if Vanderkley was credible, he failed to prove that it was more likely than not that he would be persecuted or tortured if returned to Indonesia. The IJ found that "the record is devoid of any evidence to demonstrate that [Vanderkley] has suffered persecution in any way, shape or form in Indonesia," and that the record is also "devoid of any information whatsoever to demonstrate that [Vanderkley has suffered] any past torture in Indonesia." The IJ determined that Vanderkley proffered no evidence of past persecution or torture, and alleged only a single incident of being stopped on the road and told not to go to church. The IJ noted that Vanderkley did not indicate that the statements made during the incident were intimidating, harassing, or menacing, and that the single alleged incident did not involve physical mistreatment. The IJ further noted that Petitioners were never "arrested, detained, charged with a crime, interrogated or physically mistreated by anyone in Indonesia."

Accordingly, the IJ determined that Vanderkley did not demonstrate that it was more likely than not that he would suffer persecution or torture because: (1) he voluntarily returned to Indonesia and was unharmed when he remained there between December 1999 to July 2000, following the alleged 1998 incident where he and his family were stopped from going to church; (2) his mother, seven brothers, four sisters and three of his children all remain unharmed in Indonesia; and (3) there is no evidence that individuals in Indonesia are targeted because they have worked for American companies, have spent time in the United States, or because they are part Dutch. Furthermore, the IJ noted that the United States Department of State Country Reports for 2005 stated that there were

improvements for human rights in Indonesia, and that although Indonesia has some significant problems, the problems outlined in the Country Reports do not support Vanderkley's claims.

Finally, the IJ denied Petitioners' applications for voluntary departure because Vanderkley did not have a valid travel document, and Petitioners did not demonstrate that they had the means or intention to depart the United States voluntarily. Thus, the IJ ordered Petitioners removed to Indonesia.

On November 13, 2006, Petitioners timely appealed the IJ's ruling to the BIA. On June 23, 2008, the BIA adopted and affirmed the IJ's decision, with additional commentary, and dismissed Petitioners' appeal. On July 22, 2008, Petitioners timely filed a petition for review with this Court.

## II. ANALYSIS

### A. Standard of Review

Where, as here, the BIA adopts and affirms the IJ's decision but adds its own commentary, this Court reviews the decision of the IJ as the final administrative order, while also considering the additional comments made by the BIA. *Elias v. Gonzales*, 490 F.3d 444, 449 (6th Cir. 2007) (citing *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005)). We review the IJ's factual findings, including adverse credibility findings, under the substantial evidence standard. *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007). These "findings of fact are treated as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). In contrast, we review questions of law *de novo*. *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 907 (6th Cir. 2008); *Dorosh v. Ashcroft*, 398 F.3d 379, 381 (6th Cir. 2004) (noting that when the Court reviews the BIA's "application of legal principles

to undisputed facts, rather than its underlying determination of those facts or its interpretation of its governing statutes," the review is *de novo*).

B.      **Asylum**

Petitioners first appeal the IJ's determination that Vanderkley is statutorily barred from relief based on the untimely filing of his asylum application, and that he failed to establish changed circumstances or extraordinary circumstances to excuse his failure to timely file. An alien must demonstrate by clear and convincing evidence that he filed his asylum application within one year of his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). The only exceptions to this filing deadline are "changed circumstances which materially affect the applicant's eligibility for asylum," or "extraordinary circumstances relating to the delay in filing an application within" the requisite one-year time period. 8 U.S.C. § 1158(a)(2)(D). "Extraordinary circumstances" may include mental illness, disability, legal disability, ineffective assistance of counsel, lawful status until a reasonable period before filing for asylum, or a previous timely but defective application. 8 C.F.R. § 1208.4(a)(5). "Changed circumstances" may include changes in country conditions, changes in the applicant's status due to changes in United States law, or activities in which the applicant has become involved outside his country that may place him at risk if returned home. 8 C.F.R. § 1208.4(a)(4). To qualify for either of these exceptions, an applicant must file his application within a reasonable period of time, given the circumstances. 8 C.F.R. §§ 1208.4(a)(4)(C)(ii), 1208.4(a)(5).

Vanderkley arrived in the United States on or about June 11, 2000. He did not file an application seeking asylum until July 2006. Thus, it is undisputed that when Vanderkley filed his asylum application, more than one year had passed since his lawful admission into the United States.

Petitioners also do not contest, nor seek review of, the IJ's and BIA's finding that Vanderkley did not present evidence of "extraordinary circumstances" to excuse the untimely filing. Instead, they contend that "changed circumstances" should excuse the untimely filing.

Our review of the IJ's determination that an asylum application is time-barred is statutorily limited. 8 U.S.C. § 1158 (a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General" regarding whether changed or extraordinary circumstances exist to excuse an application for asylum that is filed later than one year after entry into the United States.). Accordingly, we review denial of an asylum application for untimeliness "when the appeal seeks review of constitutional claims or matters of statutory construction" but not "when the appeal seeks review of discretionary or factual questions." *Almuhtaseb v. Gonzalez*, 453 F.3d 743, 748 (6th Cir. 2006) (construing judicial-review limitation of 8 U.S.C. § 1158 (a)(3) in light of the REAL ID Act Amendment to 8 U.S.C. § 1252(a)(2)(D)).

Petitioners' attempt to construct legal and constitutional claims to avoid this Court's jurisdictional bar is not persuasive. Petitioners contend that their right to due process was violated because the BIA "misunderstood or misapplied the 'changed circumstances' exception to the one-year filing deadline" and "failed to take into consideration the full scope of the 'changed circumstances' exception to the one year rule." Petitioners claim the BIA should have looked at all of their arguments on appeal "which not only included 'changes in conditions' in Indonesia, but also changes in circumstances relating to Petitioners in the United States, as well as changes in applicable U.S. law." Specifically, Petitioners reference the National Security Entry-Exit Registration System ("NSEERS"), initiated in 2002, which imposed "special registration requirements for nonimmigrant

aliens from certain designated countries" as a relevant "change in U.S. law . . . [that] materially affected [Vanderkley's] eligibility for asylum." 67 Fed. Reg. 52,584 (Aug. 12, 2002).

Although Indonesia became one of the specially designated countries in the NSEERS program in 2003, the law did not materially affect Vanderkley's eligibility for asylum as he had already failed to timely file his asylum application by more than a year when the program was enacted. *See id.* Moreover, Petitioners' contention that the BIA failed to consider all of their arguments is belied by the record, which reflects the IJ's and BIA's consideration of the issues raised by Petitioners, including whether Petitioners demonstrated the existence of changed circumstances that materially affected their eligibility for asylum or extraordinary circumstances related to the delay in filing; whether past harm to Petitioners was sufficiently severe so as to rise to the level of past persecution; and whether Petitioners demonstrated that their lives or freedom would be threatened in the future in Indonesia on account of their religion, ethnicity or ties to the United States. Finally, Vanderkley himself conceded that he was ineligible for asylum due to his untimely application and the fact that there was "no good reason" to excuse the untimely filing.

Thus, because Petitioners raise no colorable constitutional or legal claim but, rather, challenge the IJ's factual determinations that Vanderkley failed to demonstrate changed circumstances to excuse the untimely filing, we dismiss for lack of jurisdiction Petitioners' appeal of the IJ's denial of their asylum application based on the untimely filing.

## C.      Withholding of Removal

To qualify for withholding of removal, an applicant must demonstrate that there is a "clear probability" that if removed to a designated country, he would suffer future persecution on account of a protected ground. *Liti v. Gonzales*, 411 F.3d 631, 640-41 (6th Cir. 2005). To establish a clear probability, an applicant must demonstrate that "it is more likely than not" that he or she will be persecuted upon return. *Id.* Here, the IJ denied Vanderkley's request for withholding of removal on the grounds that he was not credible,[3] and that in the alternative, even if the IJ had found him credible, Vanderkley failed to demonstrate his eligibility for withholding of removal or protection under the CAT.

Although mentioned in their notice of appeal to the BIA, Petitioners did not challenge the IJ's adverse credibility determination in their brief to the BIA. Thus, the BIA did not specifically address the credibility determination in adopting the IJ's decision. Likewise, Petitioners do not challenge the IJ's adverse credibility determination before this Court.

This Court has established that it is not sufficient to simply raise a reviewable issue only in the notice of appeal filed with the BIA, and not argue the issue in the brief filed with the BIA.[4] *Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005) (noting that "this requirement of exhaustion of administrative remedies as a prerequisite to jurisdiction in the federal court of appeals is a creature

---

[3]The IJ correctly noted that the REAL ID Act of 2005, which modifies the standard governing credibility determinations, permitting the IJ to consider any inconsistencies, inaccuracies, or falsehoods in an asylum applicant's statements, regardless of whether they "go to the heart of" the applicant's claim, is applicable to the instant matter, as the Act governs cases filed after May 11, 2005, and Vanderkley applied for asylum on July 18, 2006.

[4]However, issues raised in the notice of appeal are deemed exhausted where, unlike in the instant matter, Petitioner does not file a brief. *See Hassan v. Gonzalez*, 403 F.3d 429, 433 (6th Cir. 2005).

of statute, namely 8 U.S.C. § 1252(d)(1), and not a court-created doctrine") (citing *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004)). Accordingly, we do not review the IJ's adverse credibility determination. Moreover, we find that the IJ's adverse credibility determination fully disposes of Petitioners' application for withholding of removal. *See Stenaj v. Mukasey*, 276 F. App'x 468, 473 (6th Cir. 2008) (declining to disturb the denial of asylum and withholding of removal where the IJ determined that Petitioner lacked credibility because "without credible evidence, [Petitioner] cannot demonstrate either past persecution or a well-founded fear of future persecution") (citing *Katabarwa v. Gonzales*, 193 F. App'x 519, 526 (6th Cir. 2006) (citing *Adhiyappa v. INS*, 58 F.3d 261, 267-68 (6th Cir. 1995))).

However, even reviewing Vanderkley's application for withholding of removal on the merits, we find that substantial record evidence strongly supports the IJ's and BIA's determination that Petitioners failed to establish past persecution or a clear probability of future persecution in Indonesia on account of their religion, ethnicity or ties to the United States. Vanderkley testified about a single incident where he and his family were allegedly stopped on their way to church and told not to attend, and stated that he did not experience any other incidents while living in Indonesia that would make him fearful of returning. While we recognize that one single incident may be sufficient to constitute persecution, the incident must be sufficiently severe to warrant such a finding. *Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir. 2006). Moreover, the persecution must be more than mere harassment, and must be inflicted upon the petitioner by the government, or persons the government is unwilling or unable to control. *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998); *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). Vanderkley has presented no such

evidence. Thus, Petitioners fail to establish that the evidence in the record compels a conclusion that they were persecuted in Indonesia.

Nor does the record compel a conclusion that Petitioners have a clear probability of future persecution. Vanderkley testified that his family, all of whom are also Seventh-day Adventists, currently reside in Indonesia unharmed. *Koliada v. INS*, 259 F.3d 482, 488 (6th Cir. 2001) (noting that the fact that Petitioner's wife and mother continued to live in Ukraine without incident suggested that Petitioner had no reasonable fear of persecution); *see also Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir. 2001) ("An applicant's claim of persecution upon return is weakened, even undercut, when similarly-situated family members continue to live in the country without incident . . . or when the applicant has returned to the country without incident."). Moreover, the fact that Vanderkley voluntarily returned to Indonesia from the United States in December 1998 – following the alleged single incident where he was stopped from going to church – until July 2000, further undercuts any contention that Petitioners face a likelihood of future persecution. *See Hakeem*, 273 F.3d at 816. Finally, Petitioners proffered no evidence to support Vanderkley's claims that individuals who are part Dutch, have lived in the United States, or have worked for American companies, have suffered persecution in Indonesia. Therefore, Vanderkley's application for withholding of removal also fails on the merits, as substantial evidence supports the IJ's and BIA's finding that Petitioners failed to establish a clear probability of persecution if returned to Indonesia.

## D. Relief under the CAT

To obtain relief under the CAT, Vanderkley must establish that it is "more likely than not that . . . he would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2);

*Pilicia*, 388 F.3d at 951 (citing the same standard). Petitioners briefly reference protection under the CAT while outlining the procedural background of the instant matter, but do not challenge the IJ's and BIA's denial of their CAT claim in their brief to this Court. They have, therefore, waived the issue. *See Al-Najar v. Mukasey*, 515 F.3d 708, 717 (6th Cir. 2008) (citing *United States v. Villareal*, 491 F.3d 605, 611 (6th Cir. 2007)). Accordingly, we dismiss the petition for review on this issue.[5]

### III. CONCLUSION

For the reasons set forth herein we **DISMISS** the petition for review insofar as it seeks review of the denial of Petitioners' application for asylum and relief under the CAT, and **DENY** the petition for review and **AFFIRM** the decision of the BIA in all other respects.

---

[5]We note that even if Vanderkley had not waived this issue, he has failed to present evidence to establish a clear probability that it is more likely than not that he will be tortured if returned to Indonesia. Thus, he is unable to satisfy the heightened standard for protection under the CAT.